BARRY W. FERNS, Bar No. 76381
FERNS, ADAMS & ASSOCIATES
2815 Mitchel Drive, Suite 210
Walnut Creek, CA 94598
Tel: (925) 927-3401
Fax: (925) 927-3419
Email: bferns@fernslaw.com

Attorney for Plaintiff, AFC CAL, LLC

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>RICHARD KHRAICH,<br><br>　　　　Debtor.<br>_____<br>AFC CAL, LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>RICHARD KHRAICH,<br><br>　　　　Defendant.<br>_____ | Case No. 14-25221-SC<br><br>Chapter 7<br><br><br><br><br>Adversary No. |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6)**

AFC CAL, LLC ("AFC"), by counsel and pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6), and Rule 7001 of the Federal Rules of Bankruptcy Procedure, for its Complaint against Richard Khraich, states as follows:

**I. PARTIES**

1.　On December 23, 2014 (the "Petition Date"), Khraich filed a voluntary petition under chapter 7 of title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California under Case No. 14-25221-SC.

2.　The meeting of creditors required by 11 U.S.C. § 341 in the underlying chapter 7 case was first scheduled to be held on held January 29, 2015 and was continued to

1

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

1 | February 10, 2015 due to Khraich's failure to attend and has been continued further until April
2 | 6, 2015.

3.     Khraich is an individual and, upon information and belief, a resident of California.

4.     AFC is a California limited liability company, and is a creditor of Khraich.

## II. JURISDICTION AND VENUE

5.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6.     Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1409.

7.     This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).

8.     The deadline to file a complaint to determine dischargeability of debts in the Khraich's bankruptcy case is March 30, 2015, and this complaint is therefore timely filed.

9.     AFC consents to the entry of a final judgment herein.

## III. FACTUAL ALLEGATIONS

### A. The Demand Promissory Note and Security Agreement

10.     At all times relevant herein, Khraich was a sole proprietor doing business as Guaranteed Auto, operating a car lot and selling cars to consumers.

11.     On or about August 18, 2010, Khraich executed a Demand Promissory Note and Security Agreement, pursuant to which he promised to pay AFC One Hundred Thousand Dollars ($100,000.00), or such greater or lesser principal amount as may be advanced by AFC pursuant thereto, together with interest. A true and accurate copy of the Demand Promissory Note and Security Agreement is attached as **Exhibit 1**.

12.     Under the terms of the Demand Promissory Note and Security Agreement and to secure Khraich's present and future obligations to AFC under that note and any other instrument, guaranty, or other document, Khraich granted AFC a security interest in substantially all of his assets, including inventory, then owned or thereafter acquired.

13.     Under the terms of the Demand Promissory Note and Security Agreement and to secure Khraich's present and future obligations to AFC under that note and any other

2

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

instrument, guaranty, or other document, Khraich also granted AFC a purchase money security interest in all vehicles, parts, and equipment financed by AFC thereunder.

14.  On or about August 18, 2010, Khraich executed an Unconditional and Continuing Guaranty pursuant to which he guaranteed the full and prompt payment of all obligations Guaranteed Auto to AFC under the Demand Promissory Note and Security Agreement and any other agreement, as amended, supplemented, or modified. A true and accurate copy of the Guaranty is attached to the Demand Promissory Note and Security Agreement as Exhibit C.

15.  On or about January 19, 2011, Khraich executed an Aggregate Advance Limit Amendment to Promissory Note and Security Agreement, amending the Aggregate Advance Limit under the Demand Promissory Note and Security Agreement to Two Hundred Thousand Dollars ($200,000.00). In executing the Aggregate Advance Limit Amendment to Promissory Note and Security Agreement, Khraich reaffirmed the August 18, 2010 Unconditional and Continuing Guaranty.

16.  On or about June 24, 2011, Khraich executed a second Aggregate Advance Limit Amendment to Promissory Note and Security Agreement, amending the Aggregate Advance Limit under the Demand Promissory Note and Security Agreement to Three Hundred Thousand Dollars ($300,000.00). In executing the Aggregate Advance Limit Amendment to Promissory Note and Security Agreement, Khraich reaffirmed the August 18, 2010 Unconditional and Continuing Guaranty.

17.  On or about August 8, 2014, Khraich executed an Aggregate Advance Limit Amendment to Promissory Note and Security Agreement, amending the Aggregate Advance Limit under the Demand Promissory Note and Security Agreement to Five Hundred Thousand Dollars ($500,000.00). In executing the Aggregate Advance Limit Amendment to Promissory Note and Security Agreement, Khraich reaffirmed the August 18, 2010 Unconditional and Continuing Guaranty.

18.  True and accurate copies of the January 19, 2011 Aggregate Advance Limit Amendment to Promissory Note and Security Agreement, the June 24, 2011 Aggregate

Advance Limit Amendment to Promissory Note and Security Agreement, and the August 8, 2014 Aggregate Advance Limit Amendment to Promissory Note and Security Agreement are attached hereto as **Exhibit 2.**

19. The Dealer Application, the Demand Promissory Note and Security Agreement, and the Aggregate Advance Limit Amendments to Promissory Note and Security Agreement, as any such documents may have been modified, amended or revised, are collectively referred to herein as the "Note."

20. AFC properly perfected its security interests in Khraich's assets by making the appropriate UCC filings with the California Department of State. A true and accurate copy of AFC's UCC filing is attached hereto as **Exhibit 3**.

21. Prior to the Petition Date, Khraich requested that AFC advance him money and/or extend him credit under the Note, and AFC in fact advanced money to Khraich and/or extended Khraich credit under the Note to purchase vehicles for resale.

22. Prior to the Petition Date, Khraich did not pay all amounts due and owing to AFC in accordance with the terms of the Note, and Khraich was and is in default thereunder.

### B. The Secured Vehicles

23. Pursuant to the Note, Khraich represented to AFC that he would hold funds derived from the sale of vehicles purchased by Khraich and financed by AFC under the Note (the "Trust Funds") in trust for the benefit of AFC, and that Khraich would pay the Trust Funds to AFC.

24. Each time Khraich requested that AFC advance him money and/or extend him credit under the Note to finance the purchase of a vehicle, Khraich represented to AFC that he would pay the Trust Funds derived from the sale of such vehicle to AFC.

25. Based upon the representations made by Khraich to AFC, AFC advanced Khraich money and/or extended Khraich credit under the Note to purchase vehicles for resale.

26. Prior to the Petition Date, Khraich sold certain vehicles he had purchased and AFC had financed under the Note (the "Secured Vehicles"). A listing of the Secured Vehicles is attached hereto as **Exhibit 4**.

4

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

27. The Secured Vehicles were inventory of Khraich within the meaning of Section 102(a)(48) of Revised Article 9 of the Uniform Commercial Code. CAL. COMMERCIAL CODE § 9102(a)(48).

28. AFC had a security interest in the Secured Vehicles.

29. AFC's security interest in the Secured Vehicles was first priority.

30. Khraich knew that AFC had a security interest in the Secured Vehicles.

31. AFC properly perfected its security interest in the Secured Vehicles.

32. Khraich knew that AFC had a properly perfected security interest in the Secured Vehicles.

33. The Trust Funds were proceeds of the Secured Vehicles.

34. Khraich received the Trust Funds for each of the Secured Vehicles.

35. AFC had a security interest in the Trust Funds.

36. AFC's security interest in the Trust Funds was first priority.

37. Khraich knew that AFC had a security interest in the Trust Funds.

38. AFC properly perfected its security interest in the Trust Funds.

39. Khraich knew that AFC had a properly perfected security interest in the Trust Funds.

40. Khraich knew that he was required to pay the Trust Funds to AFC.

41. Khraich knew that he did not have the authority or the consent of AFC to sell, transfer, or otherwise dispose of the Secured Vehicles and not pay AFC the Trust Funds.

42. Khraich had the ability to pay the Trust Funds to AFC.

43. Prior to the Petition Date, Khraich intentionally did not pay AFC the Trust Funds despite knowledge that injury to AFC was substantially certain to occur as a result.

44. By not paying AFC the Trust Funds, Khraich knowingly forced AFC to take substantially less than what it was owed.

45. Upon information and belief, Khraich used the Trust Funds for purposes other than paying AFC.

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

46. The amount due and owing under the Note from Khraich to AFC with respect to the Secured Vehicles is approximately $181,038.61.

### C. The NSF Checks

47. On December 17, 2014, Khraich paid AFC with six checks the amount of $14,747.35 (the "NSF Checks").

48. Upon information and belief, Khraich signed the NSF Checks.

49. Khraich represented to AFC that he had sufficient funds to pay the NSF Checks.

50. AFC presented the NSF Checks to its bank but the NSF Checks were dishonored.

51. At the time he presented the NSF Checks to AFC, Khraich knew but did not advise AFC that he had insufficient funds to pay the NSF Checks.

52. At the time he presented the NSF Checks to AFC, Khraich he did not intend to honor the NSF Checks

53. Khraich intentionally presented the NSF Checks to AFC despite knowledge that injury to AFC was substantially certain to occur as a result.

54. Khraich's actions caused substantial harm to AFC.

### D. Advances Made as a Result of False Representations

55. On November 14, 2013, Khraich requested financing for a 2010 Cadillac SRX with Vin # 3GYFNAEYXAS558622.

56. Khraich presented a Vehicle Transfer and Reassignment Form representing to AFC that he had purchased the vehicle from Ally Financial for $22,000. A copy of the Vehicle Transfer and Reassignment Form Khraich presented to AFC is attached hereto as **Exhibit 5**.

57. In reliance upon Khraich's representations, AFC funded Dealer in the amount of $21,250.00.

58. Dealer had, in fact, bought the 2010 Cadillac SRX from ADESA Los Angeles for $13,429.00 as evidence by the Sale Contract dated November 8, 2013. A Copy of the Sale Contract is attached hereto as **Exhibit 6**.

Case 6:15-ap-01108-SC    Doc 1    Filed 03/30/15    Entered 03/30/15 13:12:26    Desc
Main Document    Page 7 of 12

59. Had AFC known that Khraich did not purchase the 2010 Cadillac SRX for $22,000, but in fact for a much lower amount, AFC would not have funded Khraich for that vehicle.

60. Khraich presented AFC with falsified documents on at least three other occasions after November 14, 2013.

61. On information and belief, Khraich presented AFC with falsified documents on several occasions both prior to and after November 14, 2013.

62. Khraich also purchased vehicles at auctions and transferred the vehicles to his brother, Maurice Khraich, who also used the falsified sales documents to obtain funding from AFC.

63. Khraich knew that Maurice Khraich would use the falsified sales documents to fraudulently obtain funding from AFC.

64. AFC has suffered substantial financial harm, as a result of the Khraich's falsification of sales documents and his fraudulent scheme with Maurice Khraich.

65. Maurice Khraich owes AFC not less than $1,457,647.43.

66. After the Petition Date, and after AFC learned of the fraud, AFC repossessed its collateral and is currently in the process of preparing that collateral for sale in a commercially reasonable manner in an effort to mitigate its damages.

67. Had AFC known that Khraich was falsifying documents that he was presenting to AFC, AFC would have made no further advances to Khraich under the Note.

68. As a result of the misrepresentations made by Khraich to AFC, AFC was unable to determine that Khraich was in default under the Note.

69. As a result of the misrepresentations made by Khraich to AFC, AFC was unable to determine that the value of its collateral was much less than represented by Khraich.

70. As a result of the misrepresentations made by Khraich to AFC, AFC was unable to determine its true status under the Note.

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

71. As a result of the misrepresentations made by Khraich to AFC, AFC did not exercise its rights under the Note, including its right to immediately repossess vehicles it had financed under the Note.

72. Had AFC known the truth regarding its status under the Note, it would have exercised its legal rights, including repossessing vehicles it had financed under the Note.

73. Had AFC known that Khraich was presenting it with falsified sale documents, AFC would not have provided any further funding to Khraich after November 14, 2014.

74. Khraich owes AFC an amount equal to $170,898.76 for vehicles which AFC funded after November 14, 2014.

75. Khraich currently owes AFC not less than $655,700.93 for advances made by AFC under the Note at Kraich's request. That amount will be reduced by AFC's mitigation efforts through the sale of repossessed collateral.

### E. Basis for Relief

76. Khraich induced AFC to continue to make advances under the Note and otherwise by making false representations and statements, written and oral, to AFC and its representatives at the time of funding.

77. Khraich induced AFC to forbear from exercising its rights under the Note by making false representations and statements, written and oral, to AFC and its representatives at the time of funding.

78. Upon information and belief, Khraich, made statements in writing to AFC regarding vehicles financed by AFC under the Note and their proceeds, including false representations that certain vehicles were unsold and constituted inventory of Khraich upon which AFC had a properly perfected security interest.

79. Khraich obtained money, property, and/or an extension of credit from AFC by false pretenses, false representations, and/or actual fraud.

80. The written statements that are set forth above that were presented to AFC by Khraich were representations of material fact with respect to the vehicles at issue and their proceeds.

8

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

81. The written statements that are set forth above that were presented to AFC by Khraich were materially false when presented to AFC.

82. The written statements that are set forth above that were presented to AFC by Khraich were respecting the financial condition of Khraich.

83. AFC reasonably relied upon the written statements that are set forth above that were presented to AFC by Khraich.

84. At the time Khraich made the representations, statements, and/or omissions of material fact to AFC that are set forth above, he knew they were false.

85. Khraich made the representations, statements, and/or omissions of material fact to AFC that are set forth above with the intention and purpose of deceiving AFC.

86. AFC relied on the representations, statements, and/or omissions of material fact made by Khraich that are set forth above.

87. AFC actually relied on the representations, statements, and/or omissions of material fact made by Khraich that are set forth above.

88. AFC's reliance on the representations, statements, and/or omissions of material fact made by Khraich that are set forth above, was reasonable.

89. AFC's reliance on the representations, statements, and/or omissions of material fact made by Khraich that are set forth above was justified.

90. As a proximate result of the representations, statements, and/or omissions of material fact made by Khraich that are set forth above, AFC has sustained loss and has been damaged.

91. By executing the Note, AFC and Khraich intended to create an express or technical trust with respect to the Trust Funds.

92. Pursuant to the Note, Khraich was a trustee and AFC was the beneficiary with respect to the Trust Funds.

93. Khraich expressly agreed that he would hold the Trust Funds in trust for the benefit of AFC.

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

94. Khraich was clearly put on notice that he was undertaking the special responsibilities of a trustee with respect to the Trust Funds.

95. There was a fiduciary relationship between Khraich and AFC with respect to the Trust Funds.

96. AFC was the beneficial owner of the Trust Funds.

97. Khraich did not have unrestricted use of the Trust Funds.

98. Khraich was not entitled to treat the Trust Funds as his own.

99. While acting in a fiduciary capacity, Khraich misappropriated the Trust Funds.

100. While acting in a fiduciary capacity, Khraich failed to properly account for the Trust Funds.

101. Upon information and belief, Khraich appropriated the Trust Funds for his own use or benefit.

102. Upon information and belief, Khraich appropriated the Trust Funds with fraudulent intent.

103. Upon information and belief, Khraich converted the Trust Funds.

104. The representations, acts, and omissions of material fact made by Khraich to AFC that are set forth above were wrongful.

105. The representations, acts, and omissions of material fact made by Khraich to AFC that are set forth above were done intentionally.

106. The representations, acts, and omissions of material fact made by Khraich to AFC that are set forth above necessarily caused injury to AFC.

107. The representations, acts, and omissions of material fact made by Khraich to AFC that are set forth above were done without just cause or excuse.

108. At all times relevant herein, Khraich personally and actively participated in the management of Guaranteed Auto, including the disposition of inventory and management of the dealership's financial affairs.

109. Khraich is personally liable for the representations, acts, and omissions of material fact that are set forth above.

110. Pursuant to the Note, AFC is entitled to attorneys' fees, costs, and expenses incurred collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

111. AFC has been required to hire attorneys to collect and enforce the obligations under the Note, and to commence and pursue this proceeding.

112. AFC has incurred attorneys' fees, costs, and expenses collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

### COUNT I: 11 U.S.C. § 523(a)(2)(A)

113. AFC repeats and realleges paragraphs 1-112 above as paragraphs 1-112 of this Count I.

114. The debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extension of credit Khraich obtained from AFC by false pretenses, false representations, and/or actual fraud is a nondischargeable debt of Khraich's pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extensions of credit Khraich obtained from AFC by false pretenses, false representations, and/or actual fraud is a nondischargeable debt of Khraich's pursuant to 11 U.S.C. § 523(a)(2)(A); and (b) all other proper relief.

### COUNT II: 11 U.S.C. § 523(a)(2)(B)

115. AFC repeats and realleges paragraphs 1-114 above as paragraphs 1-114 of this Count II.

116. The debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extension of credit Khraich and/or others obtained from AFC by use of written statements is a nondischargeable debt of Khraich's pursuant to 11 U.S.C. § 523(a)(2)(B).

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extension of credit Khraich

and/or others obtained from AFC by use of written statements is a nondischargeable debt of Khraich's pursuant to 11 U.S.C. § 523(a)(2)(B); and (b) all other proper relief.

### COUNT III: 11 U.S.C. § 523(a)(4)

117.    AFC repeats and realleges paragraphs 1-116 above as paragraphs 1-116 of this Count III.

118.    The debt, including attorneys' fees, costs, and expenses, arising from the failure to pay the Trust Funds to AFC is a result of defalcation while acting in a fiduciary capacity, and is a nondischargeable debt Khraich's pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the failure to pay the Trust Funds to AFC is a nondischargeable debt of Khraich's pursuant to 11 U.S.C. § 523(a)(4); and (b) all other proper relief.

### COUNT IV: 11 U.S.C. § 523(a)(6)

119.    AFC repeats and realleges paragraphs 1-118 above as paragraphs 1-118 of this Count IV.

120.    The debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to AFC as a result of Khraich's actions, including but not limited to the vehicles obtained by Maurice Khraich and financed by AFC, is a nondischargeable debt of Khraich's pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to AFC as a result of Khraich's actions, including but not limited to the vehicles obtained by Maurice Khraich and financed by AFC, is a nondischargeable debt of Khraich's pursuant to 11 U.S.C. § 523(a)(6); and (b) all other proper relief.

Dated March 30, 2015

BARRY W. FERNS, Attorney at Law
FERNS, ADAMS & ASSOCIATES,

By:   /s/ Barry W. Ferns
BARRY W. FERNS
Attorney for Plaintiff,
AFC CAL, LLC

2465845

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT